UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DEANNA OLSON,

         Plaintiff,

v.                                    CASE No. 8:07-CV-1813-T-TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,

         Defendant.

_____

## O R D E R

The plaintiff in this case seeks judicial review of the denial of
her claim for supplemental security income payments.[1] Because the decision
of the Commissioner of Social Security is supported by substantial evidence
and does not contain any reversible error, the decision will be affirmed.

I.

Deanna Olson was born on November 8, 1986, and was eighteen
years old at the time of the administrative hearing (Tr. 55, 335). The plaintiff,
before she was eighteen, filed a claim for supplemental security income.

_____

[1] The parties have consented in this case to the exercise of jurisdiction by a United
States Magistrate Judge (Doc. 13).

alleging that she is disabled because she cannot walk long distances, run, participate in sports, or lift heavy objects (Tr. 72). The claim was denied initially and upon reconsideration.

The plaintiff, at her request, then received a <u>de novo</u> hearing before an administrative law judge. Since the plaintiff had turned eighteen while her claim was pending, the law judge evaluated the plaintiff under separate criteria for children and for adults. The law judge found that the plaintiff suffered from severe impairments, "including a history of fractures to the left humerus, the left fibula and tibia and the left pelvic rami" (Tr. 13). The law judge concluded, however, that the plaintiff did not have an impairment which met, or equaled, "Part A or Part B of Appendix 1 to Subpart P of Part 404 of Chapter 20 of the Code of Federal Regulations" (Tr. 18). The law judge also determined that, prior to attaining age eighteen, the plaintiff did not have an impairment that functionally equaled the severity of the listings (<u>id</u>.). Accordingly, the law judge decided that the plaintiff was not disabled prior to age eighteen and was therefore not entitled to child's benefits (Tr. 16).

The law judge concluded further that, as an adult, the plaintiff's impairments limited her to a full range of light and sedentary work (Tr. 19).

-2-

He determined that the plaintiff has no past work (id.). However, based upon the plaintiff's residual functional capacity, her age and her education, the law judge found that the medical-vocational guidelines indicated that there were jobs in significant numbers in the national economy that the plaintiff could perform (id.). Accordingly, the law judge decided that the plaintiff was not disabled as an adult (id.). The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

The plaintiff then sought judicial review in this court of the law judge's decision. However, in her memorandum, the plaintiff stated that "the present case is not one of that of a disabled adult" (Doc. 8, p. 14). The Commissioner considered that a concession as to the plaintiff's claim for supplemental security income as an adult, and I do too. Accordingly, review will be limited to the claim for child's benefits.

## II.

In 1996, the Social Security Act was amended with respect to eligibility for child's disability benefits. As amended, the Act now provides (42 U.S.C. 1382c(a)(3)(C)(i)):

> An individual under the age of 18 shall be considered disabled ... if that individual has a medically determinable physical or mental

-3-

> impairment, which results in marked and severe
> functional limitations, and which can be expected
> to result in death or which has lasted or can be
> expected to last for a continuous period of not less
> than 12 months.

The Commissioner subsequently issued regulations explaining how this provision would be implemented in determining whether a child is disabled. See 20 C.F.R. 416.924.

Similar to the approach taken with adults, the Commissioner assesses child disability claims under a sequential analysis. 20 C.F.R. 416.924(a). The first step is to determine whether the child is actually working at substantial gainful activity. 20 C.F.R. 416.924(b). If not, the second step asks whether the child has a severe impairment. 20 C.F.R. 416.924( c). If she does not, the child is considered not disabled. Id. If there is a severe impairment, the third, and final, step in the analysis is to determine whether the child has an impairment that meets, medically equals, or functionally equals, a set of criteria in the Listing of Impairments in Appendix 1. 20 C.F.R. 416.924(d). If the child does, then she is deemed disabled. 20 C.F.R. 416.924(d)(1). If she does not, then she will be found not disabled. 20 C.F.R. 416.924(d)(2).

When determining functional equivalence, a child's limitations in the following six domains of functioning are evaluated: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for herself, and (6) health and physical well-being. 20 C.F.R. 416.926a(b)(1). An impairment functionally equals a listed impairment if the plaintiff shows that the child has an extreme limitation in one, or a marked limitation in two, of the six domains of functioning. 20 C.F.R. 416.926a(a). A marked limitation is one that interferes seriously with the child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. 416.926a(e)(2)(i). It means a limitation that is more than moderate, but less than extreme. Id. An extreme limitation, which is the rating given to the worst limitations, is one that interferes very seriously with the child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. 416.926a(e)(3)(i).

As with claims by adults, a determination by the Commissioner that a child is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper

legal standards were applied and legal requirements were met. <u>Lamb</u> v. <u>Bowen</u>, 847 F.2d 698, 701 (11th Cir. 1988).

III.

In April 2000, the plaintiff, at the age of thirteen, was hit by an SUV while crossing the street on her bicycle (Tr. 212). She sustained serious injuries, including a broken left humerus, tibia, fibula, and superior pelvic rami (<u>id</u>.). Her broken leg required surgery and, in July 2000, her orthopedic surgeon, Dr. Gregory Hahn, found her to be doing well (Tr. 228). In December 2002, the plaintiff filed for supplemental security income payments, alleging onset from the date of her accident, April 12, 2000 (Tr. 72).[2]

In this case, the law judge found that the plaintiff has severe impairments, but concluded that she was not disabled as a child or as an adult (Tr. 19). As indicated, the plaintiff challenges only the determination with respect to her status as a child (Doc. 8, p. 14). Her challenge lacks merit.

---

[2]In May 2005, the plaintiff was involved in a second automobile accident and bruised her arm and hit her head on a window (Tr. 132). She testified that she sustained an injury of whiplash and a severe lower back injury in that accident (Tr. 339). This accident, however, occurred after the plaintiff turned eighteen.

The plaintiff contends first that the law judge erred in failing to find that she met the requirements of listing 101.03 in Appendix 1 of the Social Security regulations (id., p. 8). See 20 C.F.R. Part 404, Subpart P, App. 1, listing 101.03.[3]

> Listing 101.03 covers:
>
> Reconstructive surgery or surgical arthrodesis [*i.e.* fusion] of a major weight-bearing joint, with inability to ambulate effectively, as defined in 101.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset.

With respect to listing 101.03, the "[i]nability to ambulate effectively means an extreme limitation of the ability to walk: *i.e.*, an impairment that interferes very seriously with the child's ability to independently initiate, sustain or complete activities." App. 1, listing 101.00B2b(1). "Therefore, examples of ineffective ambulation for older children include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard

---

[3] The plaintiff argues that she meets listing 1.03 (Doc. 8, p. 8). Since she is challenging only the denial of her claim for child's benefits, the more precise citation is to listing 101.03. In any event, listings 1.03 and 101.03 are essentially the same.

public transportation, the inability to carry out age-appropriate school activities independently, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail." App. 1, listing 101.00B2b(3).

The medical evidence does not show that the plaintiff had "an extreme limitation of the ability to walk." Less than four months after the accident, Dr. Hahn, the treating surgeon, removed the cast on the plaintiff's leg. Dr. Hahn told the plaintiff not to run, jump, or engage in other sporting or play activities (Tr. 228-29). He did not limit the plaintiff's walking. Moreover, he said that he did "not think she needs any physical therapy as she seems to be doing exceptionally well with her range of motion" (Tr. 229). Furthermore, the plaintiff has not pointed to any subsequent records from Dr. Hahn (and I did not see any) indicating that the plaintiff has difficulty walking.

Notably, on October 15, 2002, during a visit to her primary care physician, the plaintiff had a bruised hip from "jumping on [a] deflated moon walk" (Tr. 137). This activity is certainly inconsistent with "an extreme limitation of the ability to walk."

In addition, when the plaintiff filed her disability application in December 2002, the interviewer observed that the plaintiff had no difficulty walking, and commented (Tr. 85):

> She did not use any assistive devices nor require
> any assistance. She was able to move around, bend
> & get up/down from her chair without any trouble.
> No difficulties were noticed.

Following a consultative examination on March 22, 2003, Dr. S. Rao Korabathina reported that "[h]er gait is normal" (Tr. 150).

Further, her treating surgeon, Dr. Hahn, stated on July 1, 2003, that "[o]n observation of her gait, she has normal plantigrade gait. She can heel walk and toe walk without any difficulty" (Tr. 263). Dr. Hahn added that "overall, she's actually done quite well" and that "[b]oth of her fractures have healed beautifully in good alignment" (id.).

The plaintiff, in asserting that the law judge erred in finding that the plaintiff does not meet listing 101.03, seeks support from an opinion on August 12, 2005, by the plaintiff's primary care physician, Dr. Reynaldo Lim, that the plaintiff "may need a cane" (Tr. 245). Not only was that opinion rendered months after the plaintiff reached age eighteen, but it was reasonably rejected by the law judge on grounds that it was not supported by the medical

evidence. including Dr. Lim's notes (Tr. 16) and the lack of medical treatment sought by the plaintiff (Tr. 17), and that it relied upon the plaintiff's discredited testimony (Tr. 18).

The plaintiff also attempts to find support in her own testimony. The law judge reasonably discounted that testimony because it was inconsistent with the medical evidence (id.), her lack of treatment (Tr. 17), and her daily activities, including attending school and caring for her baby (id.).

In sum, the evidence supports the law judge's finding that the plaintiff's impairments do not meet listing 101.03. Indeed, it supports the law judge's conclusion that they "do not come close" to approaching the level of severity required. There certainly is no basis for thinking that the evidence compels a different conclusion.

The plaintiff argues next that the law judge erred in his determination that the plaintiff, as a child, did not functionally equal a listing (Doc. 8. pp. 10-11). The law judge found that she had no limitation in any of the six domains and gave a reasonable explanation for each such finding (Tr. 14-16).

The plaintiff challenges the law judge's determination as to each domain, except for the domain of interacting and relating to others. Significantly, it would not be enough for the plaintiff to demonstrate that the law judge erred in one or more of the domains by finding no limitation rather than a moderate limitation. Rather, the plaintiff must show that the evidence compels a finding that the plaintiff had marked limitations in two of the five remaining domains or an extreme limitation in one. The plaintiff cannot make such a showing.

The record does not contain any opinion from a treating or examining physician or psychologist concerning the six domains. It does contain, however, opinions regarding the domains from nonexamining reviewing medical sources with impressive credentials. Thus, a pediatrician from Yale University medical school opined that the plaintiff had no limitations in five of the six domains and had a less than marked limitation in the domain of health and physical well-being (Tr. 194-99). A child psychiatrist at the University of Michigan medical school rendered the same opinion (Tr. 200-04). Particularly in the absence of any opinion from treating or examining medical sources, these opinions strongly support the law judge's determination that the plaintiff does not functionally equal a listing.

-12-

In all events, the plaintiff has failed to show that the law judge erred with respect to any of the domains. Turning to the domains, the plaintiff, in her challenge regarding the domain of acquiring and using information, seeks support from her testimony that her school attendance had been irregular and that she had been held back a year (Doc. 8, p. 10). She also noted her testimony that her poor attendance had "hurt [her grades] a little bit" (id.). However, as the Commissioner correctly points out, her failure to attend class does not mean she is in any way unable to acquire and use information (Doc. 11, p. 11). She does not allege an inability to learn. She stated that her many absences only hurt her grades "a little bit." Moreover, on a form submitted to the Social Security Administration, the plaintiff, or her mother, indicated that she had no limitation in understanding and using what she has learned (Tr. 64). Therefore, the plaintiff clearly fails to show that the law judge was incorrect in his assessment that she had no limitation in her ability to acquire and use information.

The plaintiff argues that the medical records show extreme or marked restrictions in both the domain of moving about and manipulating objects, and the domain of health and physical well-being (Doc. 8, p. 10).

-13-

She addresses these two domains together in an argument of only two sentences (id.).

With respect to the domain of moving about and manipulating objects, the law judge concluded (Tr. 15):

> Despite the claimant's allegations to the contrary, there is no evidence that the claimant's fractures in the left arm, pelvic bone and legs failed to heal satisfactorily; that she has developed significant new neck, back, arm or leg impairments related to her complaints as the result of the May 2005 accident for which she has required ongoing orthopedic or neurological care; or that she has had pain management for her discomfort. There is no school evidence of excessive absences related to the alleged impairments or to medical treatment for those impairments and no statements from teachers or other school officials of difficulty sitting, standing or moving her arms or fingers in class-related activities. Indeed there is no indication reflected in the medical evidence that the claimant has been unable to care appropriately for her newborn....

The plaintiff's two-sentence challenge to this determination asserts that opinions from Dr. Lim and Dr. Suhas Kulkarni (who saw the plaintiff only once and that was after she had turned eighteen and been in a second accident) show marked or extreme limitations (Doc. 8, p. 10). The opinions of these doctors were rendered when the plaintiff was an adult and were

-14-

addressed to the issue of the plaintiff's residual functional capacity, a step four inquiry in determining whether an adult is disabled (see Tr. 241-43, 291-95). The opinions do not discuss the six domains used in evaluating child's benefits claims.

Furthermore, the law judge discounted the opinions of Dr. Lim and Dr. Kulkarni (Tr. 17). The plaintiff has made no attempt to show that the law judge's determination regarding those opinions was erroneous.

In addition, the evidence, as discussed in connection with the issue of whether the plaintiff met listing 101.03, supports the law judge's finding that the plaintiff's limitations from her first accident were not incapacitating for at least twelve months. The evidence therefore supports the law judge's determination that the plaintiff had no limitation in the domain of moving about and manipulating objects.

In the domain of health and physical well-being, the law judge decided that exacerbations of the plaintiff's impairments were not frequent enough or severe enough to warrant a marked or extreme limitation in this domain (Tr. 18). The plaintiff has made no attempt by citation to the record to show that this conclusion is erroneous. Under these circumstances, this contention can be denied on the ground that it does not comply with the

scheduling Order (Doc. 7, p. 2). In all events, an unsupported contention cannot compel the conclusion that the plaintiff had a marked or extreme limitation in this domain.

It is noted that the two nonexamining reviewing medical sources opined that the plaintiff had a limitation in health and physical well-being, but that it was less than marked (Tr. 199, 203). Arguably, these opinions could be the basis for a contention that the law judge erred in finding that the plaintiff had no limitation in the domain. Such a contention would be unavailing, however, since it would establish, at most, that the plaintiff had a less than marked limitation in this domain.

The plaintiff challenges next her ability in the domain of attending and completing tasks (Doc. 8, p. 11). With respect to this domain, the law judge stated (Tr. 15):

> This domain considers how well the claimant focuses and maintains attention; begins, carries through, and finishes activities (including the pace activities are performed); and the ease with which the child changes activities. In this domain the claimant has no limitations. Despite testimony of difficulty focusing, the psychological evaluation of record revealed no significant problems with attention or concentration. Moreover, the claimant obviously has been able to complete all pertinent school requirements to reach the 12th grade and she,

> according to her testimony at the hearing, ... was
> doing satisfactory work in her senior year of high-
> school. The claimant, who has had a child since
> the filing of the subject application, reported no
> difficulty at the hearing in learning and carrying
> out activities related to the care of that child.

The plaintiff's cursory argument on this domain is that the law judge ignored

her medical and school attendance history (Doc. 8, p. 11). As the

Commissioner persuasively argues in response, the plaintiff did not identify

any school or medical records showing any kind of limitation in attention or

concentration (Doc. 11, p. 12). Moreover, on the Social Security

Administration's form, the plaintiff, or her mother, indicated that the plaintiff

had no limitation in paying attention and sticking to a task, except with

respect to completing chores most of the time (a limitation said to be due to

physical problems which the law judge reasonably discounted) (Tr. 67).

Accordingly, the plaintiff has failed to show that the evidence compels a

finding contrary to that of the law judge.

The plaintiff's final challenge to the domains is related to the

domain of self-care (Doc. 8, p. 11). The law judge explained his conclusion

that the plaintiff had no limitation in this domain as follows (Tr. 15-16):

> Medical records from Dr. Lim reflect that since the
> April 200[0] accident the claimant has been treated

-17-

generally for rather transient problems that have
not affected her overall ability to care for herself
physically and emotionally or since October 2004
for her baby. Little was found by Dr. Korabathina
in his examination in March 2003, when the
claimant was still under the age of 18; little was
found also by Dr. Springstead and Dr. Kanakis in
September 2005, at which time the claimant was
already an adult. Those assessments as well as Dr.
Lim's longitudinal records failed to support the
severe limitations provided by Dr. Lim and Dr.
Kulkarni a month earlier.

The plaintiff challenges this conclusion on the basis of her testimony (Doc.

8, p. 11). The law judge, however, discounted her testimony (Tr. 17). The

plaintiff has made no attempt to challenge that credibility determination.

Consequently, the plaintiff cannot rely upon her own testimony to overturn

the law judge's finding on the domain of self-care. Moreover, her testimony

is contradicted by the form submitted to the Social Security Administration

in which she, or her mother, indicated no limitations in ten areas of self-care,

and asserted limitations only with respect to washing and putting away her

clothes, helping around the house, and getting to school on time (Tr. 66)

(limitations which again are based on discredited allegations of leg pain, and

which, even if accepted, would not rise to the level of a marked impairment).

In sum, the law judge has reasonably concluded that the plaintiff has no limitations in the six domains. The plaintiff therefore has fallen far short of the required showing of marked limitations in two domains, or an extreme limitation in one domain. 20 C.F.R. 416.926a. As a result, the plaintiff cannot be found disabled on the ground that she has limitations that are functionally equivalent to a listed impairment.

The plaintiff seeks to raise three additional issues. None has merit.

The plaintiff contends that the law judge disqualified her from disability benefits because she played a role in the care of her baby (Doc. 8, pp. 11-12). There is nothing in the decision that suggests the plaintiff was disqualified due to her child care activities. While the law judge did take those activities into consideration, it was reasonable for him to do so (Tr. 15, 16, 17). An infant unquestionably needs a great deal of effort and attention. The law judge could reasonably conclude that the care of an infant supports a finding of no limitation in the domains of attending and completing tasks, moving about and manipulating objects, and self-care. If the plaintiff was not substantially engaged in taking care of the infant, she should have presented

credible testimony to that effect, particularly since the record indicates that her mother is disabled (Tr. 296).

The plaintiff argues that the law judge erroneously stated that there is no school evidence of excessive absences related to the alleged impairments (Doc. 8, p. 13). The law judge's point was not that the plaintiff did not have a large number of absences (she did), but that they were not shown to be related to the alleged impairments (see Tr. 15). As the Commissioner's response demonstrates, the law judge's statement, properly construed, is supported by the record (Doc. 11, p. 17).

The plaintiff, finally, complains that the law judge "picked and chose" the evidence that would support his position (Doc. 8, pp. 13-14). There is nothing improper or unusual about the law judge setting forth the evidence that supports his determination; that is what he is expected to do. It is up to the plaintiff to point to evidence that compels a contrary conclusion. The plaintiff has failed to do that.

It is, therefore, upon consideration

ORDERED:

That the Commissioner's decision, which is supported by substantial evidence and contains no reversible error, is hereby AFFIRMED.

The Clerk shall enter judgment in accordance with this Order and CLOSE this

case.

DONE and ORDERED at Tampa, Florida, this ___31st___ day of

December, 2008.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE